[Cite as *State v. Celli*, 2017-Ohio-2746.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 28226 |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| FRANK J. CELLI | COURT OF COMMON PLEAS |
| | COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2015 10 3257 |

## DECISION AND JOURNAL ENTRY

Dated: May 10, 2017

CALLAHAN, Judge.

{¶1}   Appellant, Frank Celli, appeals from his conviction for domestic violence in the Summit County Court of Common Pleas. For the reasons set forth below, this Court affirms.

I.

{¶2}   Mr. Celli was indicted for domestic violence involving his pregnant girlfriend, N.H.  He proceeded to trial and the jury found him guilty.

{¶3}   Mr. Celli has timely appealed his conviction and raises three assignments of error.

II.

### FIRST ASSIGNMENT OF ERROR

MR. CELLI'S CONVICTION IS IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE [I], SECTION 2 OF THE OHIO CONSTITUTION[.]

{¶4}    In his first assignment of error Mr. Celli argues the mandatory prison provision of R.C. 2919.25(D)(3)-(6) violates the Equal Protection Clause and thereby is unconstitutional both facially and as applied to him. This Court disagrees.

{¶5}    Mr. Celli asserts the mandatory prison provision in the domestic violence statute is unconstitutional because it is based on gender discrimination.  Specifically, Mr. Celli contends the mandatory prison terms are only implicated when the victim is pregnant and since only females can bear children, the enhanced penalty discriminates based on gender.  Further, he argues the mandatory prison provision applies regardless of any actual harm to the unborn child.

{¶6}    An appellate court reviews a constitutional challenge de novo.  *State v. Honey*, 9th Dist. Medina No. 08CA0018-M, 2008-Ohio-4943, ¶ 4. The relevant portion of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall * * * deny to any person within its jurisdiction the equal protection of the laws."  The Ohio Constitution provides a similar protection in Article I, Section 2: "All political power is inherent in the people. Government is instituted for their equal protection and benefit * * *." The federal and Ohio equal protection clauses are "functionally equivalent," *State v. Williams*, 126 Ohio St.3d 65, 2010-Ohio-2453, ¶ 38, and "are to be construed and analyzed identically," *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.*, 87 Ohio St.3d 55, 60 (1999).

{¶7}    When assessing an equal protection challenge, a court must "apply varying levels of scrutiny * * * depending on the rights at issue and the purportedly discriminatory classifications created by the law." *Pickaway Cty. Skilled Gaming, L.L.C. v. Cordray*, 127 Ohio St.3d 104, 2010-Ohio-4908, ¶ 18. If the challenged statute does not implicate a suspect classification or a fundamental interest, then the court applies rational basis review. *State v. Klembus*, 146 Ohio St.3d 84, 2016-Ohio-1092, ¶ 9.  A statute implicating a classification based

on gender or illegitimacy is subject to intermediate scrutiny and must bear a substantial relation to an important government interest. *Clark v. Joseph*, 95 Ohio App.3d 207, 211-212 (9th Dist.1994). The parties presented their arguments solely under the intermediate scrutiny test.

{¶8} Mr. Celli was convicted of domestic violence in violation of R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Additionally, he was convicted of the pregnancy specification, which enhances the degree of the offense from a first degree misdemeanor to a fifth degree felony when the "offender *knew* that the victim of the [domestic violence] was pregnant at the time of the violation." (Emphasis added.) R.C. 2919.25(D)(2), (5). In addition to the degree enhancement, the pregnancy specification includes a mandatory prison term. R.C. 2919.25(D)(5). In this case, Mr. Celli was subject to a six-month mandatory prison term. *See* R.C. 2919.25(D)(6)(a).

{¶9} "'Only when it is shown that the legislation has a substantial disparate impact on classes defined in a different fashion may analysis continue on the impact of those classes.'" *Beagle v. Walden*, 78 Ohio St.3d 59, 63 (1997), quoting *Califano v. Boles*, 443 U.S. 282, 294 (1979). When analyzing the pregnancy specification in the domestic violence statute as it applies to the offender, the statute makes no distinction between the punishment it imposes on male or female offenders. The mandatory prison time applies equally to a male or a female offender who "knowingly cause[ed] or attempt[ed] to cause physical harm to a family or household member"[1] and knew the victim was pregnant at the time of the violation. R.C.

---

[1] "'Family or household member'" is defined as a person "who is residing or has resided with the offender" and is "[a] spouse, a person living as a spouse, or a former spouse of the offender;" "[a] parent, a foster parent, or a child of the offender, or another person related by consanguinity or affinity to the offender;" or "[a] parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity

2919.25(A), (D)(5). Accordingly, the pregnancy specification does not define the offender based on a class and the intermediate scrutiny test is not applicable.

{¶10} Mr. Celli clarifies his position by noting that an offender is not subject to the mandatory prison time when the victim is a male, because males cannot bear children. The parties have not cited and this Court has not found any Ohio law addressing Mr. Celli's equal protection argument that the mandatory prison time is unconstitutional because it is based on the gender of the victim.

{¶11} This Court must apply the same threshold analysis from above to the victim. Mr. Celli's argument fails because he does not take into consideration all of the elements of the pregnancy specification. The pregnancy specification requires more than proof that the victim was pregnant. It also requires that the offender "knew" the victim was pregnant at the time the domestic violence occurred. R.C. 2919.25(D)(5). Thus, an offender who commits domestic violence against a pregnant victim, but does not know that the victim is pregnant is not subject to the mandatory prison term. The pregnancy specification is not based on a gender classification of the victim and the intermediate scrutiny test is not applicable.

{¶12} Mr. Celli also argues the statute is unconstitutional because mandatory prison time applies regardless of whether there is actual harm to the unborn child. Mr. Celli only presented his equal protection claim under the intermediate scrutiny test which applies to classifications based on gender and illegitimacy. *See Clark*, 95 Ohio App.3d at 211-212. The

to a spouse, person living as a spouse, or former spouse of the offender." R.C. 2919.25(F)(1)(a)(i)-(iii). Also, included in this definition is "[t]he natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent." R.C. 2919.25(F)(1)(b).

"'Person living as a spouse' means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C. 2919.25(F)(2).

above framed argument does not fall under either a gender or illegitimacy classification and thus is not subject to the intermediate scrutiny test.

{¶13} Mr. Celli has failed to correctly identify the classification created by statute and this Court will not construct one for him in order to proceed with an equal protection analysis. *See State v. Schulz*, 9th Dist. Summit No. 26875, 2015-Ohio-2252, ¶ 13. Mr. Celli's first assignment of error is overruled.

## SECOND ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED AS A MATTER OF LAW BECAUSE THE STATE FAILED TO ESTABLISH ON THE RECORD SUFFICIENT EVIDENCE TO SUPPORT THE CHARGES LEVIED AGAINST MR. CELLI IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶14} In his second assignment of error, Mr. Celli argues that there is insufficient evidence to uphold his conviction for domestic violence. Specifically, Mr. Celli argues the State did not prove that he "acted knowingly with respect to his conduct on October 18, 2015." This Court disagrees.

{¶15} "'[This Court] review[s] a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence.'" *State v. Bulls*, 9th Dist. Summit No. 27029, 2015-Ohio-276, ¶ 6, quoting *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution,

any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶16}  A sufficiency challenge to a criminal conviction presents a question of law, which the appellate court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Trifari*, 9th Dist. Medina No. 08CA0043-M, 2009-Ohio-667, ¶ 12. Although the standard of review is de novo, the appellate court does not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact. *State v. Tucker*, 9th Dist. Medina No. 14CA0047-M, 2015-Ohio-3810, ¶ 7.

{¶17}  Mr. Celli only challenges the mens rea element of the offense. He contends, even viewing the evidence in a light most favorable to the prosecution, no rational trier of fact could have found that he "acted knowingly with respect to his conduct on October 18, 2015."  Mr. Celli argues that N.H. testified that she was the aggressor, Mr. Celli did not punch or attack her, and their physical contact was a mutual scuffle.   Thus, he asserts his actions were merely reactions to N.H.'s aggressions.

{¶18}  R.C. 2919.25(A) states "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist."  R.C. 2901.22(B).  Motive, purpose, and mistake of fact are irrelevant when it comes to knowledge. *State v. Wenger*, 58 Ohio St.2d 336, 339 (1979), fn. 3. "A defendant need not act with deliberate intent to act knowingly; if the result is probable, then the defendant acts with knowledge." *State v. Kartman*, 7th Dist. Belmont No. 01 BA 65, 2002-Ohio-5189, ¶ 8, citing *Wenger* at 339. "[W]hether a person acts knowingly

can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Huff*, 145 Ohio App.3d 555, 563 (1st Dist.2001).

{¶19} In the fall of 2015, N.H. and Mr. Celli were renting the basement of N.H.'s best friend's home. On October 18, 2015, N.H. and Mr. Celli were arguing most of the morning. In an attempt to diffuse the situation, N.H. and her best friend left the house to go to the grocery store. When they returned, N.H. discovered that Mr. Celli had packed some of his and her belongings into his car. This upset N.H. and she went outside to take her things out of the car.

{¶20} N.H.'s best friend was inside the house when she heard N.H. and Mr. Celli arguing very loudly. She went outside to tell them to "calm down a little, be quiet" and then returned inside. The best friend testified that the screaming escalated and she could hear N.H. crying. She went to the side window to look outside and "watched [Mr. Celli] slam [N.H.'s] head into the back side of [her] vehicle twice." The best friend explained N.H. fell onto the ground. "And after she fell to the ground right there, [Mr. Celli] then proceeded to grab her by the back of her head and slam her into the ground." She described the injuries to N.H. as a bloody lip and little bloody spots from pebbles on her face. After witnessing these events, the best friend called 911.

{¶21} A neighbor, who does not know N.H. or Mr. Celli, witnessed them arguing and engaging in a physical struggle. The neighbor was outside on his porch when he heard yelling, but could not make out what was said. According to the neighbor, Mr. Celli was carrying a basket and N.H. "snatched" it from him and started throwing clothes in the yard. They then got "face-to-face" and were yelling back and forth when "he had her around the throat and they went

to the ground." Mr. Celli fell on top of N.H. and she was kicking to get him off of her. After witnessing these events, the neighbor went inside to call 911.

{¶22} N.H. testified that she was very angry with Mr. Celli but did not want him to leave. She began "wrestling over suitcases" and ended up on the ground. She admitted that she was the one on the ground and that her lip was cut and her forehead bruised and scratched. However, she did not think that "he intentionally, * * *, put [her] on the ground." She also conceded that she told the police that Mr. Celli punched her and put her face into the driveway.

{¶23} Officer Hackathorn testified that when he arrived at the scene, N.H. had blood on her lip and forehead, she was crying, upset, and under some distress. N.H. told the officer that "she had been into a fight with her boyfriend; * * *; that her boyfriend had hit her in the face, which kind of pushed her to the ground. And then she tried to get back up off the ground, and he again shoved her face into the ground." The officer took photographs of N.H.'s injuries, which depict a bloody lip, scrapes on her forehead, and a black eye. The officer also questioned Mr. Celli as to how blood got on his right knuckles. Mr. Celli did not know.

{¶24} Mr. Celli did not testify. However, the surrounding facts and circumstances provide sufficient evidence that he acted knowingly when he caused physical harm to N.H. *See Huff*, 145 Ohio App.3d at 563. The testimony reflects a mutual, but escalating argument and struggle between Mr. Celli and N.H. over personal belongings. During the struggle, Mr. Celli grabbed N.H. by her head and throat, knocked her to the ground, and pushed her face into the gravel driveway. A reasonable trier of fact could find that Mr. Celli was aware that he was about to make physical contact with N.H., and that by doing so he would probably cause her physical harm. Because injury is probable in a mutual, but escalating physical struggle, Mr. Celli acted with knowledge.

{¶25} N.H.'s belief about whether Mr. Celli intended to harm her does not refute the mens rea of knowingly in a domestic violence conviction. *See Huff* at 563. Mr. Celli's intentions are immaterial. *See Kartman*, 2002-Ohio-5189, at ¶ 8 ("A defendant need not act with deliberate intent to act knowingly.") The evidence reflects Mr. Celli acted knowingly by engaging in conduct which increased the probability of violence and injury to N.H. *See State v. Dixon*, 8th Dist. Cuyahoga No. 82951, 2004-Ohio-2406, ¶ 15.

{¶26} Viewing the evidence in a light most favorable to the State, there is sufficient evidence for a rational trier of fact to have found the essential element of knowingly in a domestic violence charge proven beyond a reasonable doubt. *See Jenks,* 61 Ohio St.3d 259, at paragraph two of the syllabus. Mr. Celli's second assignment of error is overruled.

## THIRD ASSIGNMENT OF ERROR

MR. CELLI'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE [] IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶27} In his third assignment of error, Mr. Celli argues his conviction is against the manifest weight of the evidence because of the inconsistencies between all of the witnesses' testimony and the best friend's lack of credibility. This Court disagrees.

{¶28} A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *Thompkins,* 78 Ohio St.3d at 387. While the test of sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. *Id.* at 390 (Cook, J., concurring).

{¶29} When applying the manifest weight standard, appellate courts are required to consider the whole record, "weigh the evidence and all reasonable inferences, consider the

credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten,* 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida,* 457 U.S. 31, 42 (1982). This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against the conviction. *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); *see also Otten* at 340.

{¶30} Mr. Celli argues his conviction is against the manifest weight of the evidence because the four witnesses have different accounts of what transpired. He questions the credibility of the testimony from the best friend and the neighbor because they did not witness the entire event. He also challenges the credibility of the police officer's testimony because it was based on a statement made by N.H., who claims to have been  pressured by the police to make a statement that was contrary to what happened.  Lastly, Mr. Celli questions the motive and credibility of the best friend's testimony.

{¶31} There are differences in the testimony between the best friend and the neighbor as to what they witnessed happening between Mr. Celli and N.H.  While they both agree that there was yelling, they testified to slightly different physical conduct.  The jury could have found the differences in the testimony attributable to the fact that the best friend and the neighbor witnessed the incident at different times.

{¶32} The best friend indicated she was inside the house and Mr. Celli and N.H. were outside. The best friend went to the window when the screaming escalated. Thus, there was a delay in the best friend witnessing the incident. Moreover, both the best friend and the neighbor admit to losing sight of the incident while making the 911 calls.

{¶33} The 911 calls are timestamped. The neighbor made the first call at 2:01 p.m., followed by the best friend at 2:02 p.m. Based on the timing of the 911 calls, the jury could have concluded that what the best friend observed happened after what the neighbor observed. "[T]he trier of fact is in the best position to determine the credibility of witnesses and evaluate their testimony accordingly." *State v. Johnson*, 9th Dist. Summit No. 25161, 2010-Ohio-3296, ¶ 15. Thus, the jury was in the best position to determine if the differences in the testimony between the best friend and the neighbor were actual inconsistencies or just observations from different vantage points and periods of time.

{¶34} The only witness who testified to the entire incident was N.H. Called as the court's witness, N.H. told the jury "[i]t stinks" that she has been subpoenaed to come to court to testify in this matter and wished this would "just * * * go away." While N.H. testified that she felt pressured by her best friend and the police to make the statement, the jury also heard the jail call between Mr. Celli and N.H. in which he tells her to drop the charges. In the same call, Mr. Celli tells N.H. how much he loves her, how sorry he is, that he does not know how he did that to her, and asks her to bail him out. The jury was in the best position to determine N.H.'s credibility and evaluate her testimony to decide if she was pressured to make a statement to the police or to drop the charges. *See Johnson* at ¶ 15.

{¶35} At trial, N.H. testified that the fight that day was both of their faults. She described the incident as a "stupid tug of war * * * over luggage" in which they "wrestled" and

she "was the one by the car and on the ground." However, she adamantly denied it was a physical attack and denied that Mr. Celli punched her.

{¶36} N.H.'s testimony conflicts with the statement that she gave to the police when they arrived on the scene. "[I]n domestic violence cases, it is not uncommon for the complaining witness to change her story before trial." *State v. Brown*, 3d Dist. Allen No. 1-97-74, 1998 WL 227182, *2 (May 8, 1998). Officer Hackathorn testified as to N.H.'s statement, and her physical and emotional appearance when he arrived on scene. N.H.'s statement to the police was that "she had been into a fight with her boyfriend; * * *; that her boyfriend had hit her in the face, which kind of pushed her to the ground. And then she tried to get back up off the ground, and he again shoved her face into the ground." N.H. admits she made this statement to the police, but only because she felt pressured to do so.

{¶37} The officer described N.H. as having blood on the left side of her lip and face and little scrapes on the left side of her forehead. Additionally, she was crying and had a difficult time speaking because she was choked up. He described N.H. as presenting as "emotionally distraught, very upset from something traumatic that occurred."

{¶38} At trial, N.H. conceded to having a "cut on [her] lip and [a] scratch on [her] face" from "wrestling" with Mr. Celli. However, she minimized the injuries, claiming they looked worse in the pictures than they really were because nobody would let her clean up. She also denied that she had a black eye in the pictures, saying instead that it was her "natural dark eyes and the shadow."

{¶39} The bloody lip and scrape on the forehead, along with N.H. appearing visibly distraught and having a considerably darker and bigger circle under her left eye than her right eye, were depicted in the photographs taken at the scene and admitted into evidence. N.H.'s

original statement and the testimony of the best friend and officer were supported by the only physical evidence in the case, the photographs. The jury was free to disregard the victim's contradictory trial testimony where there was evidence presented in support of the victim's prior statement of the facts. *See Brown*, 1998 WL 227182 at *2.

{¶40} Lastly, Mr. Celli asserts the verdict was against the manifest weight of the evidence because the best friend's testimony was not credible and she had motive to lie. He points to N.H.'s testimony that her best friend is manipulative and selfish and did not like Mr. Celli dating N.H. The best friend testified that she did not agree with some of the things Mr. Celli had done in the past, but she didn't "have [any] hard feelings towards [Mr. Celli]. [She was] not mad at him. [She doesn't] dislike him. [She was] just [there] to tell the truth." The best friend readily admitted she does not like Mr. Celli dating N.H. and she had expressed that opinion to N.H. Additionally, the best friend indicated she broke her wrist in a fight with her brother, while N.H. testified that her best friend broke her wrist in a fight with a boyfriend, who subsequently went to jail for domestic violence. It was within the jury's province to believe or reject the testimony of the best friend and to weigh her credibility. *See State v. Miles,* 9th Dist. Summit No. 26187, 2012-Ohio-2607, ¶ 24, quoting *State v. Rice,* 9th Dist. Summit No. 26116, 2012-Ohio-2174, ¶ 35.

{¶41} "In reaching its verdict, the jury was in the best position to evaluate the credibility of the witnesses and it was entitled to believe all, part, or none of the testimony of each witness." *State v. Shank*, 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-5368, ¶ 29. This Court will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version. *State v. Tabassum*, 9th Dist. Summit No. 25568, 2011-Ohio-6790, ¶ 27.

{¶42} Based upon the evidence presented at trial, the jury found Mr. Celli guilty of domestic violence. Having reviewed the record, this Court cannot conclude that the jury clearly lost its way and created a "manifest miscarriage of justice." *Otten,* 33 Ohio App.3d at 340. The third assignment of error is overruled.

III.

{¶43} Mr. Celli's first, second, and third assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, P. J.
SCHAFER, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

DAWN M. KING, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.