[Cite as *State v. Blouir*, 2022-Ohio-1222.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 30066 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CHRISTOPHER M. BLOUIR | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 20 04 1148 |

DECISION AND JOURNAL ENTRY

Dated: April 13, 2022

SUTTON, Judge.

**{¶1}** Defendant-Appellant, Christopher Blouir, appeals from the judgment of the Summit County Court of Common Pleas. For the following reasons, this Court affirms.

I.

## Relevant Background

**{¶2}** Mr. Blouir was indicted for: (1) one count of aggravated murder, in violation of R.C. 2903.01(A)/R.C. 2929.02(A), an unclassified felony with a firearm specification; (2) one count of murder, in violation of R.C. 2903.02(A)/R.C. 2903.02(D)/R.C. 2929.02(B), an unclassified felony with a firearm specification; (3) one count of murder, in violation of R.C. 2903.02(B)/R.C. 2903.02(D)/R.C. 2929.02(B), an unclassified felony with a firearm specification; (4) one count of felonious assault, in violation of R.C. 2903.11(A)(1)/R.C. 2903.11(D)(1)(A), a felony of the second degree with a firearm specification; and (5) one count of carrying a concealed weapon, in violation of R.C. 2923.12(A)(2)/R.C. 2923.12(F)(1), a felony of the fourth degree.

{¶3}    Initially, Mr. Blouir pleaded not guilty to the indictment.  However, Mr. Blouir later changed his plea to guilty on all counts.

## The Plea Hearing

{¶4}    At the plea hearing, the trial court first addressed Mr. Blouir's potential maximum sentences, stating:

* * *

As to Count 1, the charge of aggravated murder, that carries with it a possible maximum sentence-well, it carries with it potential sentences of 20 years to life, plus three for the gun; or 25 years to life, plus three with a gun; or 30 years to life, plus three with a gun specification; or life without parole, also with the gun specification.

Those are all mandatory sentences.  Whatever sentence the [c]ourt gives you on that offense, it would be a mandatory prison sentence.

As to Count 2, the murder count, the mandatory maximum sentence * * * would be 15 years to life, plus three for the gun specs.

The same is true for Count 3.

And then on the felonious assault charge, which is not a mandatory sentence, but it does come with a firearm specification, which is a mandatory three years.  So you would be serving the three years plus anywhere between 2 to 12 years on the felonious assault charge.

And then the carrying concealed weapon charge is a [f]elony of the 4th degree.  That carries with it a potential maximum sentence of up to 18 months in the Ohio State Penitentiary.

Counts 1 through 4 would * * * merge.  And you could only actually get sentenced on one of those counts.  The State is * * * electing to proceed on Count 1, just so you're aware.  That's the aggravated murder charge.

* * *

{¶5}    Further, after explaining the potential maximum sentences, the trial court engaged Mr. Blouir in the following colloquy:

* * *

THE COURT: So how old are you, Mr. Blouir?

[MR. BLOUIR]: 30.

* * *

THE COURT: And you are a United States citizen, correct?

[MR. BLOUIR]: Yes.

THE COURT: Okay. So by pleading guilty, you're giving up certain rights. We have a trial date set for you, I believe, a week from Monday.

And so you do have the right to have your case tried to a judge or a jury. And at that trial you'd be presumed innocent, and the State would have to prove your guilt beyond a reasonable doubt as to each and every element of the offenses.

You would have the right at trial to question or cross-examine any of the witnesses that would testify against you.

You'd have the right to present your own evidence and witnesses. You could even subpoena people; compel them to come to court and testify for you.

You could testify on our own behalf if you wanted to, but nobody could force you to do that. That would be your own decision.

Do you understand that?

[MR. BLOUIR]: Yes.

THE COURT: You need to know that a guilty plea is a complete admission of guilt, and while you do have the right to appeal a guilty plea, it's a limited right. And it's hard for a lawyer to come up with issues to raise on such an appeal if there hasn't been a suppression hearing or a trial. Those cases are hard to win.

And especially if your main claim on the appeal is that you are innocent, and you've pled guilty, that would be a very difficult appeal to win.

You also have the right to appeal your sentence if you wish to. And if indigent, the [c]ourt would appoint a lawyer to represent you, would make sure a notice of appeal was timely filed and that a transcript or record of the proceedings was provided to you at no cost.

You understand?

[MR. BLOUIR]: Yes.

THE COURT: All right. Are you pleading guilty of your own free will?

[MR. BLOUIR]: Yes.

* * *

THE COURT: So is anyone forcing you to plead guilty? * * *

[MR. BLOUIR]: No.

THE COURT: Okay. And has anyone promised you anything in exchange for your guilty plea other than what we've talked about here in open court on the record?

[MR. BLOUIR]: No.

THE COURT: All right. And your lawyers * * * have spoken with you quite a bit. Do you feel like they've explained the situation to you and you've been able to communicate with them and understand what's happening here today?

[MR. BLOUIR]: Yes.

THE COURT: All right. Do you have any other questions for me about the rights you're giving up as a result of your guilty plea?

[MR. BLOUIR]: No.

* * *

THE COURT: All right. Then as to the charges, Count 1, aggravated murder with a gun specification; Count 2 and Count 3, which are each murder with firearm specifications; Count 4, which is felonious assault with a firearm specification; and Count 5, carrying a concealed weapon, a [f]elony of the 4th degree, how do you plead?

[MR. BLOUIR]: Guilty.

THE COURT: I'll find that you have knowingly, intelligently and voluntarily entered those pleas and I will find you guilty.

* * *

Prior to taking Mr. Blouir's plea, the trial court also explained that all of the murder charges carry with them parole eligibility, but not post-release control. The trial court further explained that the felonious assault charge, which the State expressed it would not elect to proceed on at sentencing, does include mandatory post-release control for a period of three years. Additionally, the trial

court explained the carrying concealed weapon charge included optional post-release control for up to a period of three years.

## The Sentencing Hearing

{¶6} At sentencing, the State began by reprising its stance as set forth at the plea hearing:

> The State made it clear that, according to law, that the sentencing for Count One through Four would merge, and that the State would elect to have [Mr. Blouir] sentenced under Count One, aggravated murder.

The State also indicated there was no prior agreement as to the length of Mr. Blouir's sentence. The trial court then invited five members of the victim's family to address the court, including his young daughter who witnessed her father's murder. The victim's daughter indicated she hoped Mr. Blouir "gets as much time as possible." Following these statements, the State asked the trial court to sentence Mr. Blouir to "life without parole."

{¶7} Mr. Blouir's counsel also addressed the trial court stating:

> At age 30, [Mr. Blouir] has no prior criminal record. He has an eighth grade education. He has a strong work ethic and is a hard worker, and he's been a laborer, a painter. He was in construction and worked as a mechanic. He has difficulty reading, writing and speaking publicly. He has epilepsy and is taking medication for that condition.
>
> [Mr. Blouir] is a deeply emotional person. This incident has had an enormous impact on him. He has expressed his remorse to us on numerous occasions. [Mr. Blouir's] family is extremely important to [him].
>
> [Mr. Blouir's] parents are here today, and they love him deeply and face him as he faces his sentence.
>
> * * *
>
> And [Mr. Blouir] has three children, ages nine, three and two. They mean the world to him, and it seems to me, he was a very involved father. He and the mother of his children were engaged before she broke things off after becoming involved with [the victim].
>
> * * *
>
> When [Mr. Blouir] committed the offenses, he was feeling tremendously distraught. He was not thinking clearly. He was not behaving in rational ways.

His emotions were [spiraling] out of control. In his mind, his life was crumbling around him because he was losing his family.

The mother of his children had left him, to his knowledge, for [the victim]. [Mr. Blouir] thought he might lose his children, too. He tried to work things out with the mother of his children, and he tried to work things out with [the victim]. And he felt helpless. He turned to drugs which only made matters worse.

[Mr. Blouir] made poor choices which culminated in the tragedy in this case.

The [individual] that * * * sits before you today is a much more sober rational person than the person that was emotionally [spiraling] out of control that night. He is remorseful. He has insight. He understands more acutely not only that what he did was wrong but why it was so wrong and how many lives it affected.

We ask that you consider all of this in your determination of [Mr. Blouir's] sentence, and we would ask that you sentence [Mr. Blouir] on the lower end of the sentencing spectrum.

{¶8} Mr. Blouir then addressed the trial court, the victim's family members and his own parents. In so doing, Mr. Blouir apologized and asked for forgiveness. Further, Mr. Blouir explained he "was not in the right state of mind[,]" and was "strung out on drugs and not thinking straight[.]" Mr. Blouir, however, acknowledged his drug use was "no excuse for what [he] [had] done." Mr. Blouir stated, "I truly apologize for taking someone's son, brother, grandchild and/or father."

{¶9} The trial court then asked Mr. Blouir to stand and come forward for sentencing. First, the trial court explained that Mr. Blouir would be placed on the violent offender registration list for ten years, which is tolled during his incarceration. Further, the trial court stated:

* * *

You entered a guilty plea and you have not had a trial, but you still do possess the right to appeal your sentence if you wish to do that.

* * *

The rights of appeal on a sentencing are different, and there is also the right to appeal the guilty pleas.

Those are different than for someone who had a complete trial, * * * it is a limited right, and there are limited issues that you can raise, but there are still issues that you can raise, and you are permitted to do so.

* * *

As to the charges, I also want to make sure that it is clear there are five counts in this indictment. * * * The parties all agree and the [c]ourt agrees as well that Counts Two, Three, Four and the specifications all merge with Count One, which is the count that the State elected to proceed on.

So the Court will only be pronouncing sentence on Count One and then on Count Five. Count Five is the carrying a concealed weapon charge, which is a felony of the fourth degree.

* * *

And I'm sure [the State] explained this somewhat, but it's very, very unusual for someone to plead guilty to the highest charge they are facing which could potentially result in them receiving life without parole without testing it at trial.

* * *

And by pleading guilty, [Mr. Blouir] has extremely limited his options here on changing that conviction[.]

* * *

So the [c]ourt feels it is appropriate in this case, * * * to sentence Mr. Blouir to 25 years to life, plus a mandatory three years for the gun specification, and * * * also find that a consecutive sentence is appropriate in this matter regarding the carrying a concealed weapon charge. * * * [S]o I'm going to add a year and a half on Count five, the carrying a concealed weapon, and I'm going to run that consecutively.

* * *

Thus, Mr. Blouir was sentenced to an aggregate prison term of 29 and ½ years to life, plus costs of this prosecution.

{¶10} Mr. Blouir now appeals, raising three assignments of error for this Court's review.

II.

## ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. BLOUIR BY FAILING TO ENSURE HIS PLEA WAS MADE KNOWINGLY, INTELLIGENTLY, IN VIOLATION OF MR. [] BLOUIR'S RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTIONS 5, 10, AND 16 OF THE OHIO CONSTITUTION.**

{¶11} In his first assignment of error, Mr. Blouir argues his plea should be vacated because the trial court: (1) made misleading statements regarding Mr. Blouir's ability to appeal his sentence, pursuant to R.C. 2929.03, for aggravated murder; (2) made misleading statements regarding post-release control; and (3) failed to comply with Crim.R. 11(C)(3). For the following reasons, we are not persuaded by Mr. Blouir's arguments.

{¶12} "A criminal defendant's choice to enter a guilty plea is a serious decision." *State v. Bishop*, 156 Ohio St. 3d 156, 2018-Ohio-5132, ¶ 10, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶ 25. "Due process requires that a defendant's plea be made knowingly, intelligently, and voluntarily; otherwise, the defendant's plea is invalid." *Id.* Importantly, Crim.R. 11(C) "prescribes the process that a trial court must use before accepting a plea of guilty to a felony." *Bishop* at ¶ 11, citing *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶ 8. Indeed, the "trial court must follow certain procedures and engage the defendant in a detailed colloquy before accepting his or her plea." *Id.*, citing *Clark* at ¶ 26; *see* Crim.R. 11(C). "The court must make the determinations and give the warnings that Crim.R. 11(C)(2)(a) and (b) require and must notify the defendant of the constitutional rights that Crim.R. 11(C)(2)(c) identifies." *Id.*, *citing Veney* at ¶ 13. "While the court must strictly comply with the requirements listed in Crim.R. 11(C)(2)(c), the court need only substantially comply with the requirements listed in Crim.R. 11(C)(2)(a) and (b)." *Id.*, citing *Veney* at ¶ 18.

{¶13} In order to substantially comply with Crim.R. 11, "a slight deviation from the text of the rule is permissible; so long as the totality of the circumstances indicates that the defendant

subjectively understands the implications of his plea and the rights he is waiving[.]" (Internal quotations omitted.) *State v. Callaghan*, 9th Dist. Summit No. 29431, 2021-Ohio-1047, ¶ 7, quoting *Clark* at ¶ 31, quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990). "If substantial compliance is not achieved, a reviewing court must determine if the trial court partially complied or failed to comply with the rule." *Id.*, citing *Clark* at ¶ 32. "A trial court's complete failure to comply with Crim.R. 11 requires the plea to be vacated, but if the court partially complied with the rule the defendant must demonstrate prejudice for the plea to be vacated." *Id.* "The test for prejudice is whether the plea would have otherwise been made." (Internal quotations omitted.) *Id.*, quoting *Nero* at 108.

### Misleading Statements Regarding Appeal of Sentence

{¶14} Mr. Blouir first argues the trial court misled him, through its statements, "into believing that if he did not agree with [his] sentence, he could challenge this with the Court of Appeals[.]" Specifically, Mr. Blouir takes issue with the fact that R.C. 2953.08(D)(3) "bars appealing a sentence pursuant to [R.C. 2929.02 through R.C. 2929.06,]" which includes his conviction for aggravated murder.

{¶15} The Supreme Court of Ohio, in *State v. Patrick*, 164 Ohio St.3d 309, 2020-Ohio-6803, examined the limitations set forth in R.C. 2953.08(D)(3) relating to appellate review of sentences imposed under R.C. 2929.03. In so doing, the Supreme Court explained:

> R.C. 2953.08 was enacted in 1996 as part of Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136, and its companion legislation, Am.Sub.S.B. No. 269, 146 Ohio Laws, Part VI, 10752 (collectively referred to as "S.B. 2"). R.C. 2953.08(A) states, "In addition to any other right to appeal and except as provided in division (D) of this section, a defendant who is convicted of or pleads guilty to a felony may appeal as a matter of right the sentence imposed upon the defendant * * *." R.C. 2953.08(D)(3), however, states that "a sentence imposed for aggravated murder or murder pursuant to sections 2929.02 to 2929.06 of the Revised Code is not subject to review under this section."

* * *

It is clear from the language in R.C. 2953.08 that the statute does not establish the *only* avenue by which a party may appeal a sentence. R.C. 2953.08(A) begins by stating, "*In addition to any other right to appeal * * ***, a defendant who is convicted of or pleads guilty to a felony may appeal as a matter of right the sentence imposed upon the defendant on one of the following grounds * * *." (Emphasis added.) The language "[i]n addition to any other right to appeal" appears again in R.C. 2953.08(B) regarding appeals by the prosecution. Also, R.C. 2953.08(E) states: "A sentence appealed *under this section* shall be consolidated *with any other appeal in the case*. If no other appeal is filed, the court of appeals may review only the portions of the trial record that pertain to sentencing." (Emphasis added.) These provisions referring to other methods of appeal make clear that R.C. 2953.08 does not prescribe the sole right to appeal a criminal sentence.

Indeed, R.C. 2953.02 also provides a right to appeal a judgment or final order to the court of appeals "[i]n a capital case in which a sentence of death is imposed for an offense committed before January 1, 1995, *and in any other criminal case*." (Emphasis added.) R.C. 2953.02 also provides, "A judgment or final order of the court of appeals involving a question arising under the Constitution of the United States or of this state may be appealed to the supreme court as a matter of right." The final judgment for purposes of appeal under R.C. 2953.02 is the sentence. * * * Thus, R.C. 2953.02 also provides a statutory right to appeal a criminal sentence.

Moreover, the preclusive language in R.C. 2953.08(D)(3) demonstrates that its scope is limited to the bases of appeal described in R.C. 2953.08. It states that "[a] sentence imposed for aggravated murder or murder pursuant to sections 2929.02 to 2929.06 of the Revised Code is not subject to review *under this section*." (Emphasis added.) *Id*. In other words, R.C. 2953.08(D)(3) does not determine whether a sentence imposed for aggravated murder is subject to review under any other statutory provision. In that way, R.C. 2953.08(D)(3)'s statutory language makes clear that it does not preclude other potential avenues of appellate review.

(Emphasis in original.) *Patrick* at ¶ 12; ¶ 15-17. In light of the foregoing, the Supreme Court of Ohio concluded "R.C. 2953.08(D)(3) does not preclude an appeal of a sentence for aggravated murder or murder that is based on constitutional grounds." *Id*. at ¶ 22. *See also State v. Ramsay*, 9th Dist. Medina No. 19CA0016-M, 2021-Ohio-2870, ¶ 10. ("Regarding *Patrick*, the Ohio Supreme Court determined that Section 2953.08(D)(3) does not preclude a court of appeals from considering the appeal of a juvenile under Section 2953.02 who has been sentenced to life imprisonment without parole on constitutional challenges to a sentence.")

**{¶16}** Here, as indicated above, the trial court repeatedly cautioned Mr. Blouir at the plea hearing regarding the limitations in an appeal from a plea of guilty. The trial court stated:

* * *

> You need to know that a guilty plea is a complete admission of guilt, and while you do have the right to appeal a guilty plea, it's a limited right. And it's hard for a lawyer to come up with issues to raise on such an appeal if there hasn't been a suppression hearing or a trial. Those cases are hard to win.

* * *

> You also have the right to appeal your sentence if you wish to.

* * *

**{¶17}** As such, based upon the Supreme Court of Ohio's ruling in *Patrick* and *this* record, we cannot say the trial court "misled" Mr. Blouir into pleading guilty based upon its comment regarding an appeal of Mr. Blouir's sentence. The trial court's comment, that Mr. Blouir had "the right to appeal [his] sentence if [he] wish[ed] to," is, under *Patrick*, an accurate recitation of the law. Thus, there is no error as to Crim.R. 11 in this regard.

**Misleading Statements Regarding Post-Release Control**

**{¶18}** Mr. Blouir also suggests the trial court misled him into pleading guilty due to its comments regarding post-release control. Specifically, Mr. Blouir argues "[a]ny discussion of post-release control was erroneous and misleading because [Mr. Blouir] was not eligible." In so doing, Mr. Blouir relies upon *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748. However, as explained below, *Clark*, *supra*, is distinguishable from the matter at hand.

**{¶19}** In *Clark*, *supra*, Mr. Clark pleaded guilty to aggravated murder, an unclassified felony, with a gun specification and was sentenced to life imprisonment with parole eligibility after 28 years. However, during Mr. Clark's plea colloquy, the trial court incorrectly stated:

> After you serve your prison term, you'll be eligible for release under post-release control. And I believe in your case, if you do receive parole, your post-release control will be mandatory. And that means that there will be certain conditions that you're going to have to live up to after you're released, if you're released after 28 years.
>
> The maximum period of time you could be on post-release control would be five years. And I would expect you'd probably get the full five years.
>
> There would be certain conditions that you'd have to fulfill. One condition, obviously, would be that you'd have to remain law abiding. But there would be other conditions.
>
> Now, if you're placed on post-release control and if you violate any of those conditions of post-release control, you'd be charged with a violation and you would have a hearing before the Parole Board, and if it were determined at the hearing that you had violated one or more conditions of your post-release control, you could have a new prison term imposed of up to nine months in duration; however, the total of all such new prison terms could not exceed one-half of your original sentence.

*Clark* at ¶ 17-20. Additionally, Mr. Clark's written plea agreement stated, in relevant part, that:

> I understand that after I am released from prison, I may have a period of post-release control for five (5) years following my release from prison. If I violate a post-release control sanction imposed upon me, any one or more of the following may result.

(1) The Parole Board may impose a more restrictive post-release control sanction upon me; and

(2) The Parole Board may increase the duration of the post-release control subject to a specified maximum; and

(3) The more restrictive sanction that the Parole Board may impose may consist of a prison term, provided that the prison term cannot exceed nine months and the maximum cumulative prison term so imposed for all violations during the period of post-release control cannot exceed one-half of the stated prison term originally imposed upon me; and

(4) If the violation of the sanction is a felony, I may be prosecuted for the felony and, in addition to any sentence it imposes on me for the new felony, the Court may impose a prison term, subject to a specified maximum, for the violation.

*Id.* at ¶ 8-12. Because the trial court incorrectly stated the law regarding post- release control, the Supreme Court of Ohio determined the trial court failed to substantially comply with Crim.R. 11. *Id.* at ¶ 36, 40. ("[A]n individual sentenced for aggravated murder such as [Mr.] Clark is not subject to post[-]release control, because that crime is an unclassified felony to which the post[-]release-control statute does not apply.") As such, the Supreme Court reversed and remanded the matter back to the appellate court to determine, in the first instance, whether Mr. Clark was prejudiced by the trial court's misinformation regarding post-release control.

{¶20} Here, at Mr. Blouir's plea hearing, the trial court stated, in relevant part:

There's a few things you need to know. Obviously the murder charges carry with them parole situations, and I've already told you what the parole eligibility is for those, but there's nothing related to post-release control on that because that's a parole situation.

But as to the felonious assault charge, if for some reason that's the only charge you were [sentenced] on, which * * * I don't believe that's going to be likely because [the State is] not electing to proceed under that count, but I'm still obligated to talk about this.

On the felonious assault charge, if you serve time on that sentence alone and then were released from prison, upon your release, the Ohio Department of Correction would be giving you mandatory three years of post-release control.

And as to the carrying concealed weapon charge, [the Ohio Department of Correction] would have the option of putting you on post-release control for a period of up to three years.

{¶21} Unlike the trial court in *Clark* however, the trial court, here, did not incorrectly advise Mr. Blouir regarding post-release control in relation to the murder charges. Instead, because the State did not officially "elect" which count to sentence Mr. Blouir on until the sentencing hearing, the trial court correctly advised Mr. Blouir regarding mandatory post-release control for the felonious assault charge and optional post-release control for the carrying concealed weapon charge. As such, the trial court did not make misleading or incorrect statements of law as to post-release control. Thus, there is no error as to Crim.R. 11 in this regard.

### Failure to Comply with Crim.R. 11(C)(3)

{¶22} Lastly, Mr. Blouir contends the trial court erred by failing to take his plea, pursuant to Crim.R. 11(C)(3), separately from the other counts in the indictment. Mr. Blouir further contends the trial court failed to advise him that his sentences for aggravated murder and carrying a concealed weapon *could* run consecutively at the plea hearing. For the following reasons, we are not persuaded by Mr. Blouir's arguments.

{¶23} Crim.R. 11(C)(3) states, in pertinent part, that:

With respect to aggravated murder committed on and after January 1, 1974, the defendant shall plead separately to the charge and to each specification, if any. A plea of guilty or no contest to the charge waives the defendant's right to a jury trial, and before accepting a plea of guilty or no contest the court shall so advise the defendant and determine that the defendant understands the consequences of the plea.

{¶24} Here, prior to taking Mr. Blouir's guilty plea, the trial court explained that Counts 1 through 4 would merge at sentencing and the State would elect to move forward on Count 1, aggravated murder. As to Count 1, the trial court further explained:

the charge of aggravated murder, that carries with it a possible maximum sentence-well, it carries with it potential sentences of 20 years to life, plus three for the gun; or 25 years to life, plus three with a gun; or 30 years to life, plus three with a gun specification; or life without parole, also with the gun specification.

Those are all mandatory sentences. Whatever sentence the [c]ourt gives you on that offense, it would be a mandatory prison sentence.

The trial court also engaged in a detailed colloquy with Mr. Blouir regarding the rights he would be giving up and the limitations of appealing from a guilty plea. Although the trial court did not have Mr. Blouir plead separately to aggravated murder, from the other counts in the indictment, Mr. Blouir has not indicated he suffered any prejudice or would otherwise not have pled guilty to the indictment as charged. Mr. Blouir was, in fact, sentenced on Count 1, aggravated murder, with a firearm specification and Count 5, carrying a concealed weapon. The trial court clearly explained that, in pleading guilty, Mr. Blouir was waiving his right to a jury trial, as well as other rights, and the trial court extensively questioned Mr. Blouir to determine he understood the consequences of his plea.

{¶25} Further, Mr. Blouir's argument that the trial court erred in failing to advise him at the plea hearing that his sentences for aggravated murder, with a firearm specification, and carrying a concealed weapon *could* run consecutively, is not well-taken. In making this argument, Mr. Blouir relies upon *State v. Bishop*, 2018-Ohio-5132, which addressed a narrow question regarding post-release control and maximum aggregate sentences. However, in *State v. Roberts*, 9th Dist. Medina No. 19CA0004-M, 2019-Ohio-4393, ¶ 6, this Court analyzed a similar issue, stating:

In [*State v. Johnson*, 40 Ohio St.3d 140 (1988)], the Supreme Court also considered whether failure to inform a defendant of the aggregate total prison term violated Crim.R. 11(C). With respect to the mandates of Crim.R. 11(C)(2)(a), the Court concluded that a trial court complies with the Rule by informing a defendant of the maximum sentence for each of the individual crimes with which he is charged. *Id.* at 134. The Court held that "[f]ailure to inform a defendant * * * that the court may order him to serve any sentences imposed consecutively, rather than concurrently,

is not a violation of Crim.R. 11(C)(2), and does not render the plea involuntary." *Id*. at syllabus. A three-judge plurality of the Ohio Supreme Court recently questioned the applicability of *Johnson* under the current version of Crim.R. 11(C). *See State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, ¶ 14-17. In *Bishop*, however, the question at hand was not whether Crim.R. 11(C)(2)(a) requires a defendant to be informed of the aggregate maximum prison term, and the plurality took care to note that "what happened to the defendant in *Johnson* is a far cry from what happened" to the defendant in *Bishop*. *Bishop* at ¶ 16. Instead, *Bishop* addressed a specific question: whether a defendant who pleads guilty to a new felony committed while on post[-]release control must also be informed of the consequences that could result from the post[-]release control violation during the plea colloquy. *Bishop* at ¶ 14-17.

{¶26} Here, the record reveals the trial court correctly advised Mr. Blouir regarding the maximum sentence for each count in the indictment, and Mr. Blouir has not challenged the specific issue addressed in *Bishop*, *supra*. Thus, there is no error as to Crim.R. 11 in this regard.

{¶27} Accordingly, Mr. Blouir's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**R.C. 2953.08(D)(3) PROHIBITS APPELLATE REVIEW OF SENTENCES FOR AGGRAVATED MURDER WHEN THE SENTENCES ARE AMONG THOSE AUTHORIZED BY STATUTE, THAT SECTION UNCONSTITUTIONALLY VIOLATES THE EQUAL PROTECTION AND DUE PROCESS CLAUSES OF THE UNITED STATES CONSTITUTION AND THE EQUAL PROTECTION AND DUE COURSE OF LAW PROVISIONS OF THE OHIO CONSTITUTION.**

{¶28} In his second assignment of error Mr. Blouir argues R.C. 2953.08(D)(3), as applied to aggravated murder sentences without death specifications, unconstitutionally violates the Equal Protection and Due Process clauses of the United States Constitution and Ohio Constitution. We disagree.

## Equal Protection Analysis

{¶29} Whether R.C. 2953.08(D)(3) denies equal protection appears to be an issue of first impression in this Court. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides: "No State shall * * * deny to any person within its jurisdiction the

equal protection of the laws." Further, Article I, Section 2 of the Ohio Constitution similarly provides: "All political power is inherent in the people. Government is instituted for their equal protection and benefit * * *." Additionally, the Supreme Court of Ohio has stated: "[t]hese two equal-protection provisions are functionally equivalent and require the same analysis." *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, ¶ 29.

{¶30} Appellate courts review constitutional challenges de novo. *See State v. Celli*, 9th Dist. Summit No. 28226, 2017-Ohio-2746, ¶ 6. As a threshold matter, we must remain mindful that statutes are presumed constitutional. *State v. Noling*, 149 Ohio St.3d 327, 2016-Ohio-8252, ¶ 9, citing R.C. 1.47. Simply stated, "[e]qual protection does not forbid the legislature from making classifications but simply prohibits 'treating differently persons who are in all relevant respects alike.'" *State v. Klembus*, 146 Ohio St.3d 84, 2016-Ohio-1092, ¶ 8, quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). In order to find a statute unconstitutional, a court must determine "'beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.'" *Noling* at ¶ 10, quoting *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142 (1955), paragraph one of the syllabus. "'[D]oubts regarding the validity of a legislative enactment are to be resolved in favor of the statute.'" *Id.*, quoting *State v. Smith*, 80 Ohio St.3d 89, 99-100 (1997).

{¶31} "A party may challenge a statute as unconstitutional either on its face or as applied to a particular set of facts." *State v. Torres*, 9th Dist. Lorain No. 18CA011451, 2020-Ohio-3077, ¶ 8, citing *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, ¶ 37. "Any party raising a facial challenge must demonstrate that there is no set of circumstances in which the statute would be valid." *Torres* at ¶ 8, citing *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, ¶ 26. "The fact that a statute might operate unconstitutionally under some plausible set of circumstances is insufficient to render it wholly invalid." *Harrold* at ¶ 37. "In an as-applied

challenge, the challenger contends that application of the statute in the particular context in which he has acted is unconstitutional." *Torres* at ¶ 8, citing *State v. Austin*, 9th Dist. Summit No. 28199, 2017-Ohio-7845, ¶ 8. "Any party challenging a statute as applied bears the burden of presenting clear and convincing evidence of a presently existing set of facts that make the statute unconstitutional and void when applied to those facts." *Id*.

{¶32} "'In determining whether a statute is unconstitutional because it violates the right to equal protection, we must first examine the class distinction drawn to decide if a suspect class or a fundamental right is involved.'" *Torres* at ¶ 9, quoting *Roseman* at 447. "'If no suspect class or fundamental right is involved, the classification will be subject to a "rational basis" level of scrutiny.'" *Id*. "A suspect class is typically defined as one saddled with such disabilities, or subjected to such a history of purposeful, unequal treatment as to command extraordinary protection, such as race, national origin, religion, and sex." *Torres* at ¶ 9, citing *State v. Fortson*, 11th Dist. Portage No. 2011-P-0031, 2012-Ohio-3118, ¶ 40. "'Recognized fundamental rights include the right to vote, the right of interstate travel, rights guaranteed by the First Amendment to the United States Constitution, the right to procreate, and other rights of a uniquely personal nature.'" *Torres* at ¶ 9, quoting *State v. Williams*, 88 Ohio St.3d 513, 530 (2000).

{¶33} Here, the parties agree the criminal sentencing statute, R.C. 2953.08(D)(3), involves neither a suspect class nor fundamental right. As such, R.C. 2953.08(D)(3) must be reviewed under the rational basis test, which requires this Court to "grant substantial deference to the General Assembly's predictive judgment and to uphold a statute if it is rationally related to a legitimate governmental purpose." *Torres* at ¶ 10. "'The rational-basis test involves a two-step analysis. We must first identify a valid state interest. Second, we must determine whether the method or means by which the state has chosen to advance that interest is rational.'" *Pickaway*

*Cty. Skilled Gaming, L.L.C. v. Cordray*, 127 Ohio St.3d 104, 2010-Ohio-4908, ¶ 19, quoting

*McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 2005-Ohio-6505, ¶ 9.

**{¶34}** In *State v. Burke*, 2d Dist. Montgomery No. 26812, 2016-Ohio-8185, ¶ 25-27, the

Second District Court of Appeals aptly analyzed this very issue. In so doing, the Second District

stated:

> Ohio courts grant substantial deference to the legislature when conducting an equal-protection rational-basis review. Classifications will be invalidated only if they bear no relation to the state's goals and no ground can be conceived to justify them.
>
> * * *
>
> Sentencing for murder and aggravated murder falls under a special, comprehensive statutory scheme different from that applied to other felonies. The prison sentences are mandatory. The Senate Bill 2 general felony sentencing statutes apply to lesser offenses classified as first through fifth degree felonies. The general felony sentencing statutes exclude aggravated murder under R.C. 2929.12(A), 2929.13(F), and 2929.14(A) as to the term of imprisonment to be imposed. Courts have determined that, even before Senate Bill 2, the general felony sentencing requirements did not apply in aggravated murder cases. Simply put, through the enactment of a separate statutory scheme regarding sentencing for aggravated murder, the legislature clearly intended said offenses to be treated differently because of their severity.
>
> Ohio's General Assembly certainly may differentiate between criminal offenders on the basis of the perceived seriousness of their crimes. Additionally, we find nothing irrational or arbitrary in the legislature's decision to view aggravated murder or murder as a more serious offense such that it warrants a separate statutory scheme from classified felonies. A statute withstands rational-basis scrutiny if it is neither irrational nor arbitrary under any set of facts that reasonably might be conceived to justify it. Therefore, in light of the foregoing, we conclude that [Mr.] Burke has not demonstrated a lack of any rational basis for R.C. 2953.08(D)(3). Accordingly, R.C. 2953.08(D)(3) does not violate the Equal Protection Clause.

(Internal quotations and citations omitted.)

**{¶35}** Because it is comprehensive and persuasive, we adopt the analysis of the *Burke*

Court. Indeed, the Ohio General Assembly has a valid interest in imposing a separate statutory

scheme for aggravated murder and murder from other general felony crimes because of the

seriousness of those types of crimes, and R.C. 2953.08(D)(3) provides a rational scheme to advance that interest. As such, R.C. 2953.08(D)(3) does not violate the Equal Protection Clauses of the United States or Ohio Constitutions.

## Due Process Analysis

{¶36} Mr. Blouir also argues R.C. 2953.08(D)(3) violates his due process rights because it prohibits "review of a sentence even if it is arbitrarily or even unlawfully imposed, as long as it was chosen from among the sentences authorized by statute[.]" However, as previously discussed, the Supreme Court of Ohio in *Patrick*, *supra*, determined R.C. 2953.08(D)(3) "does not preclude an appeal of a sentence for aggravated murder or murder that is based on constitutional grounds." *Patrick* at ¶ 22. Further, if a sentence is authorized by statute, as Mr. Blouir suggests, it is not arbitrarily or unlawfully imposed. *See State v. Cassidy*, 21 Ohio App.3d 100, 102 (9th Dist.1984). ("[T]he court has broad discretion in sentencing within the statutory limits. Generally, there is no abuse in sentencing when the sentence is authorized by statute.")

{¶37} Accordingly, Mr. Blouir's second assignment of error is overruled.

**ASSIGNMENT OF ERROR III**

**MR. BLOUIR WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED UNDER THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.**

**{¶38}** In his third assignment of error, Mr. Blouir contends his counsel was ineffective for failing to: (1) present any mitigating factors, by way of witnesses or evidence, at the sentencing hearing; and (2) object to the trial court's lack of compliance with Crim.R. 11(C)(3).

**{¶39}** To prove ineffective assistance of counsel, an appellant must establish both that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id.* at paragraph three of the syllabus. If a defendant fails to prove one prong under *Strickland*, this Court need not address the other prong. *State v. Lortz*, 9th Dist. Summit No. 23762, 2008-Ohio-3108, ¶ 34. Moreover, "counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Treesh,* 90 Ohio St.3d 460, 490 (2001).

**{¶40}** Here, the record reveals Mr. Blouir's counsel addressed the trial court regarding numerous mitigating factors to consider in determining the length of Mr. Blouir's sentence. Mr. Blouir's counsel advised the trial court that Mr. Blouir: (1) has no prior criminal record;[1] (2) has an eighth-grade education; (3) has a strong work ethic; (4) worked as a laborer, in construction,

---

[1] The trial court also ordered a presentence investigation report which showed Mr. Blouir did, in fact, have a prior criminal record for domestic violence.

and as a mechanic; (5) has epilepsy and takes medication to treat his condition; (6) is deeply emotional and has expressed remorse on numerous occasions; (7) has loving parents who came to court to support him; (8) has three children, ages nine, three, and two; (9) was a very involved father; (10) was feeling tremendously distraught, not thinking clearly, and spiraling out of control when he committed the offense because he believed he was losing his family; (11) tried to work things out with the victim prior to committing the offense; and (12) was under the influence of drugs and alcohol when he committed the offense. The record further reveals the trial court allowed Mr. Blouir to personally address the court, heard statements from the victim's family members, and ultimately sentenced Mr. Blouir to 25 years to life on the aggravated murder charge, which is on the lower end of the sentencing spectrum.

**{¶41}** Mr. Blouir also contends his counsel's performance was deficient for failing to object to the trial court's alleged non-compliance with Crim.R. 11(C). However, this Court has consistently held that "trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel." *State v. Taylor*, 9th Dist. Lorain No. 01CA007945, 2002-Ohio-6992, ¶ 76. Further, based upon our prior analysis regarding Crim.R. 11(C), we determined from the record that, although the trial court did not take the plea for aggravated murder separately from the other charges, it clearly explained that, in pleading guilty, Mr. Blouir was waiving his right to a jury trial, as well as other rights, and extensively questioned Mr. Blouir to determine whether he understood the consequences of his plea. Moreover, the aggravated murder charge merged with the two murder charges and the felonious assault charge, leaving only aggravated murder, and carrying a concealed weapon for sentencing purposes. The trial court and the State explained, prior to Mr. Blouir's plea, that the State would elect to have Mr. Blouir sentenced on aggravated murder. Mr. Blouir indicated he understood and wished to

plead guilty. As such, because there was no prejudicial error to Mr. Blouir in terms of his plea, his counsel could not be ineffective in this regard.

{¶42} Thus, based upon this record, we cannot say Mr. Blouir's counsel's performance was deficient.

{¶43} Accordingly, Mr. Blouir's third assignment of error is overruled.

III.

{¶44} Mr. Blouir's three assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETTY SUTTON
FOR THE COURT

TEODOSIO, P. J.
CALLAHAN, J.
CONCUR.


APPEARANCES:

JAMES K. REED, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.