[Cite as *State v. Depetro*, 2022-Ohio-2249.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 21CA0053-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DEVIN E. DEPETRO | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 21CR0142 |

DECISION AND JOURNAL ENTRY

Dated: June 30, 2022

SUTTON, Judge.

{¶1} Defendant-Appellant, Devin Depetro, appeals the judgment of the Medina County Court of Common Pleas denying his motion to withdraw his guilty plea. For the reasons that follow, this Court affirms.

I.

**Relevant Background Information**

{¶2} On February 9, 2021, the Medina County Grand Jury indicted Mr. Depetro on: (1) one count of endangering children, in violation of R.C. 2919.22(B)(1)(E)(2)(d), a felony of the second degree; (2) one count of endangering children, in violation of R.C. 2919.22(A)(E)(2)(c), a felony of the third degree; and (3) one count of tampering with evidence, in violation of R.C. 2921.12(A)(1)(B), a felony of the third degree. Mr. Depetro originally pleaded not guilty, but later changed his plea to guilty on one count of endangering children, a felony of the second degree. As part of the plea agreement, the State dismissed the other two counts.

**{¶3}** Prior to sentencing, Mr. Depetro filed a motion to withdraw his plea. The motion indicated, without further explanation, that: "[Mr. Depetro] did not commit the offenses in this matter and [wished] to pursue his defenses in a trial." The trial court held an evidentiary hearing at which Mr. Depetro presented no testimony or evidence. Instead, Mr. Depetro's attorney stated:

> I've talked to [Mr. Depetro] after he entered the change of plea to the first count of the indictment. He's told me that he's innocent. [Mr. Depetro] said he was under a lot of pressure, he was scared, he's innocent.

Further, the State responded:

> Judge, we would oppose the motion to withdraw the plea. You went through a Criminal Rule 11 with [Mr. Depetro]. You took time with him and counseled him. Of course, as you always do, you asked if he needed more time and he said he didn't. [Mr. Depetro] went through the plea knowingly, voluntarily, and intelligently, and we'd ask that * * * that sentencing date continue.

The trial court denied Mr. Depetro's motion, ordered a presentence investigation report, and proceeded to sentencing.

**{¶4}** Mr. Depetro was sentenced to an indefinite prison term of a minimum of 6 years and a maximum of not more than 9 years. In so doing, the trial court explained its reasoning as follows:

> Let me tell you why I'm going to sentence you the way I am, and to do that, I'm just going to take a look at a report, and I'm not going to show you the pictures because you know what it was like.

> The Akron Children's Hospital Social Worker Department provided information about the child's initial medical assessment. Her condition is, it is clear, that this child had been severely neglected and severely neglected over a long period of time.

> She is five years old and she only weighs twenty-six pounds. The five-year-old does not and apparently cannot speak. The five-year-old is not toilet-trained. She is in diapers at five years of age.

> She has bedbug bites, bruises, and sores all over. Her finger and toenails are so outgrown that they're yellow, brown, and curling in on themselves. She has bruising on the side of her head that appears to be fading and another bruise on her forehead and a red mark between her eyes. She has linear bruises across her butt

cheeks and scarring on both wrists. She has open and scabbing sores on her genital area and dark red inflammation on her labia and her upper thighs. She has scars and red marks to her lower [] right abdomen and her [right] thumb appears to be cracking and healing. That looks as if it might have been a burn.

They went to the residence, and when they went to the residence, no one was located there, except there was an overwhelming smell of urine and filth. The interior of the residence appeared to be substantially different than they had seen it previously.

Apparently the area in which she was living-and I'm saying living-was a room measuring three-and-a-half feet by five-feet wide and completely bare of items. This is where the child was kept. This is an area when, after Children's Services initially came there, the entire carpeting in that area was removed. There was a single-pull light bulb with several spiderwebs and two empty shelves with brown stains in the room. The wall stains and bumps of debris poked through the layer of dried paint in the room. Thick grime, scratch marks, and wear were observed on the lower portion of the door.

The outside of the door had a crusted brown matter on it and grime running through the length of the underside, suggesting it was so compacted with fecal matter that it pushed out into the bedroom to the bottom of the doorway's threshold. This is where the five-year-old child was living.

The carpet pad on the floor still surrounded by carpet tacks was no longer foam-like, but was thick and damp, having no elasticity. The pad emitted an incredibly strong, distinct smell of urine and feces. Outlining the area was feces, molded-in food particles, hair, and bugs consistent with carpet beetles and bedbugs.

While the residence throughout was obviously filthy, no other area in the condominium could compare to the biohazard waste and offensive smells observed inside the closet. Given the medical concerns, the secession of speech, the malnourishment of the child, the bug bites, the inflamed genitals, and the open scabbing sores, there is a high probability that the child had been neglected and confined inside this [] three-and-a-half foot by five-foot closet for the past year.

She has some medical issues, I agree.

Look, I've done a lot of these, this is one I'll remember.

**{¶5}** Mr. Depetro now appeals raising four assignments of error for our review. In order to better facilitate our discussion, we reorder certain assignments of error.

II.

## ASSIGNMENT OF ERROR I

**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED [MR.] DEPETRO'S MOTION TO WITHDRAW HIS PRESENTENCE GUILTY PLEA.**

{¶6} In his first assignment of error, Mr. Depetro argues the trial court abused its discretion in denying the motion to withdraw his guilty plea. We disagree.

{¶7} Crim.R. 32.1 provides that "[a] motion to withdraw a plea of guilty * * * may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." There is no "absolute right" to withdraw a guilty plea before sentencing. *State v. Xie*, 62 Ohio St.3d 521 (1992), paragraph one of the syllabus. Nevertheless, motions filed before sentencing should be granted "freely and liberally[.]" *Id.* at 527. A trial court must conduct a hearing to determine whether the defendant has demonstrated a "'reasonable and legitimate basis'" to withdraw the plea, but it is within the trial court's discretion to determine the nature and scope of that hearing. *State v. Benson*, 9th Dist. Summit Nos. 28527, 28577, 28578, 28579, 2017-Ohio-8150, ¶ 7, quoting *Xie* at paragraph one of the syllabus and *Lorain v. Price*, 9th Dist. Lorain No. 96CA006314, 1996 WL 556916, *2 (Oct. 2, 1996).

{¶8} In every case, the defendant bears the burden of demonstrating that there is a reasonable and legitimate basis for withdrawing the plea. *State v. Jones*, 9th Dist. Wayne No. 12CA0024, 2012-Ohio-6150, ¶ 37, quoting *State v. DeWille*, 9th Dist. Medina No. 2101, 1992 WL 323896, *1 (Nov. 4. 1992). The determination of whether to grant a presentence motion to withdraw a guilty plea is entrusted to the discretion of the trial court, and this Court reviews that decision for an abuse of discretion. *See Xie, supra,* at paragraph two of the syllabus. Indeed, this

Court has concluded that a trial court does not abuse its discretion by denying a presentence motion to withdraw a guilty plea when:

> (1) the defendant is represented by competent counsel; (2) the trial court provides the defendant with a full hearing before entering the guilty plea; and (3) the trial court provides the defendant with a full hearing on the motion to withdraw the guilty plea, where the court considers the defendant's arguments in support of his motion to withdraw the guilty plea.

*State v. Pamer*, 9th Dist. Medina No. 04CA0027-M, 2004-Ohio-7190, ¶ 10, citing *State v. Rosemark*, 116 Ohio App.3d 306, 308 (9th Dist.1996). Our review is also guided by considering prejudice that may be suffered by the State, the adequacy of representation afforded to the defendant, the character of the underlying plea hearing, the scope of the trial court's consideration of the motion to withdraw, the timing of the motion, the reasons articulated in the motion to withdraw, the defendant's understanding of the nature of the charges and the potential sentences, and whether the defendant may have been not guilty of the offense or had a complete defense. *State v. Wheeland*, 9th Dist. Medina No. 06CA0034-M, 2007-Ohio-1213, ¶ 12, quoting *State v. Fulk*, 3d Dist. Van Wert No. 15-04-17, 2005-Ohio-2506, ¶ 13, quoting *State v. Lewis*, 3d Dist. Allen No. 1-02-10, 2002-Ohio-3950, ¶ 11. This Court has consistently noted that "[a] mere change of heart" does not justify the withdrawal of a guilty plea. *State v. West*, 9th Dist. Summit No. 28668, 2017-Ohio-8474, ¶ 7, citing *State v. Brown*, 9th Dist. Summit No. 23759, 2007-Ohio-7028, ¶ 23.

**{¶9}** In denying Mr. Depetro's motion to withdraw, the trial court stated:

> As to the factors the [c]ourt must consider, [Mr. Depetro] was represented by competent counsel. Next, the [c]ourt provided [Mr. Depetro] with a full Crim.R. 11 hearing prior to the [c]ourt accepting his guilty plea to the remaining charge of the [i]ndictment. In exchange for his guilty plea, the State [] dismissed Counts II and III of the [i]ndictment (both felonies of the third degree). The [c]ourt determined [Mr. Depetro] changed his plea voluntarily, as the [c]ourt explained the nature of the charges and the maximum penalty involved. The [c]ourt explained the effect of the guilty plea, as well as the effect of all the different pleas available

to [Mr. Depetro]. The [c]ourt advised [Mr. Depetro] that by changing his plea he was giving up his right to a jury trial, where he would have the right to confront the witnesses against him, testify himself, subpoena witnesses and the State would be forced to prove his guilt beyond a reasonable doubt at a trial where he would be presumed innocent. The [c]ourt further informed [Mr. Depetro] that should the matter proceed to a jury trial and he chose not to testify, the [c]ourt would inform the jury that the fact [Mr. Depetro] did not testify could not be used against him. The [c]ourt [found] [Mr. Depetro] changed his plea knowingly, voluntarily and intelligently. Turning to the final mandatory factor, [Mr. Depetro] was provided a full evidentiary hearing on his motion to withdraw his plea. Although he chose not to do so at either hearing, [Mr. Depetro], at both hearings, was permitted to testify and/or present witnesses in support of his motion.

As to the other factors the [c]ourt may consider, the [c]ourt finds: 1) that the State would be prejudiced by the withdrawal, 2) [Mr. Depetro] was represented by competent counsel throughout the proceedings, 3) the Crim.R. 11 hearing was extensive and complete, 4) the [c]ourt provided a full evidentiary hearing to [Mr. Depetro] on the motion to withdraw the plea, 5) the [c]ourt fully and fairly considered the motion and the arguments of counsel, 6) the timing of the motion was reasonable, although the [c]ourt finds the grounds for the motion insufficient, 7) the [c]ourt has considered reasons for the motion and fully analyzed its rationale for the denial of the motion herein, 8) [Mr. Depetro] understood the nature of the charges and the potential penalties, as the [c]ourt explained them in detail at the plea hearing, and 9) even though [Mr. Depetro] states in his motion that he is innocent, nothing has changed since the time of the change of plea, except for the fact that [Mr. Depetro] simply changed his mind.

{¶10} Based upon our review of this record, we cannot say the trial court abused its discretion in denying Mr. Depetro's motion to withdraw. Mr. Depetro's arguments regarding feeling pressured and being scared demonstrate a mere change of heart, which is not sufficient to withdraw an otherwise legally obtained plea of guilty. As such, Mr. Depetro weighed his options and, with the assistance of competent counsel, chose to plead guilty.

{¶11} Accordingly, Mr. Depetro's first assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

## [MR.] DEPETRO'S PLEA WAS NOT KNOWINGLY MADE.

{¶12} In his fourth assignment of error, Mr. Depetro argues his plea was not knowingly made because the trial court failed to advise him that the presumption of prison can be rebutted by R.C. 2929.13(D)(2).

{¶13} "A criminal defendant's choice to enter a guilty plea is a serious decision." *State v. Blouir*, 9th Dist. Summit No. 30066, 2022-Ohio-1222, ¶ 12, quoting *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, ¶ 10, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶ 25. "Due process requires that a defendant's plea be made knowingly, intelligently, and voluntarily; otherwise, the defendant's plea is invalid." *Id.* In felony cases, the Supreme Court of Ohio has indicated:

> Crim.R. 11(C) prescribes the process that a trial court must use before accepting a plea of guilty to a felony. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶ 8. The trial court must follow certain procedures and engage the defendant in a detailed colloquy before accepting his or her plea. [*State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶ 26]; *see* Crim.R. 11(C). The court must make the determinations and give the warnings that Crim.R. 11(C)(2)(a) and (b) require and must notify the defendant of the constitutional rights that Crim.R. 11(C)(2)(c) identifies. *Veney* at ¶ 13. While the court must strictly comply with the requirements listed in Crim.R. 11(C)(2)(c), the court need only substantially comply with the requirements listed in Crim.R. 11(C)(2)(a) and (b). *Id.* at ¶ 18.

*Bishop* at ¶ 11. Specifically, Crim.R. 11(C) states:

> (2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally either in-person or by remote contemporaneous video in conformity with Crim.R. 43(A) and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

**{¶14}** Here, prior to accepting his guilty plea, the trial court engaged Mr. Depetro in the following Crim.R. 11 colloquy:

[The Court]: * * * Tell me about yourself What's your name?

[Mr. Depetro]: My name is Devin Depetro.

[The Court]: Are you a citizen of the United States?

[Mr. Depetro]; Yes.

[The Court]: Are you represented by an attorney?

[Mr. Depetro]: Yes.

[The Court]: Did you talk your case over with your attorney?

[Mr. Depetro]: Yes, I did.

[The Court]: Did you tell him everything about the case so he can properly represent you?

[Mr. Depetro]: Yes.

[The Court]: Have you had enough time to talk to him?

[Mr. Depetro]: Yes.

[The Court]: Do you need more time?

[Mr. Depetro]: No, sir.

[The Court]: Are you satisfied with your attorney's representation of you in this case?

[Mr. Depetro]: Yes.

[The Court]: How old are you?

[Mr. Depetro]: Twenty-nine.

[The Court]: What's the highest grade you've attended in school?

[Mr. Depetro]: High school graduate.

[The Court]: Good. So you read and write English? That's where I'm going with this.

[Mr. Depetro]: Yes.

[The Court]: Are you now under the influence of alcohol or drugs?

[Mr. Depetro]: No, sir.

[The Court]: Have you ever been adjudged to be mentally incompetent?

[Mr. Depetro]: No.

[The Court]: The indictment in this particular case in Count One says that on the 28th of December, 2020, through the 2nd of February, 2021, and in Medina County, that you did abuse [] a child under eighteen years of age[.] A single count of endangering children, and it says furthermore, the violation resulted in serious physical harm to [the child]. This makes it a felony of the second degree.

The felony of the second degree is an offense for which there is an indefinite sentence. So the maximum you could receive for that is eight years to twelve years in prison. * * * So what I have to do when I go through the change of plea is give you the maximum sentence you could receive.

There's also a possible fine. I've never fined anybody. * * * [T]he maximum fine is fifteen thousand dollars. I'm not going to do that in this case in any circumstance.

This is an offense for which prison is presumed. It is a felony of the second degree, so there's a presumed prison sentence, although not mandatory. The prison system handles the indefinite sentences in a specific way. First, you have to know that you may be entitled to something call earned prison credit between five and fifteen percent of your minimum sentence for exceptional conduct or adjustment to the prison setting. That's good time; that's good for you.

You may also receive, if you're in prison, sanctions by the Department of Rehabilitation and Correction that could increase the period of time from the minimum sentence to the maximum sentence. If they make specific findings, they could continue to hold you[,] and they could do this a number of times while you're in prison for conduct or a threat to safety that you may pose. If they do that, they could do that from the minimum sentence to the maximum sentence, but [] at the end of the maximum stated term, you must be released.

Do you understand what I'm trying to explain?

[Mr. Depetro]: Yes.

[The Court]: Perfect, good.

You've got certain rights you're giving up by changing your plea. [] You have the right to a speedy and public trial by jury.

At the trial you would have the right to have an attorney; if you couldn't afford one, I would appoint one for you. At the trial you would have the right to confront the witnesses against you, subpoena your own witnesses, and testify yourself. If you decided not to testify, I would tell the jury the fact that you're not testifying could not be used again you.

You have the right to plead [n]ot [g]uilty, that's a total denial of the charge; [g]uilty, that's a total admission; [n]ot [g]uilty by [r]eason of [i]nsanity, that's just what it sounds like; then there's a [n]o [c]ontest plea. That does not admit your guilty, but it does admit the facts in the indictment are true; the difference is, the plea cannot be used against you in [a] subsequent civil or criminal case.

You have the right to force the State to prove you guilty beyond a reasonable doubt at trial where you're presumed innocent. You're giving up those rights because you want to enter a plea.

I have to ask you, Mr. Depetro, has anybody threatened you in any way to get you to change your plea?

[Mr. Depetro]: No.

[The Court]: Anybody promise you anything?

[Mr. Depetro]: No.

[The Court]: All right. The State's dismissing Counts Two and Three on the condition that you plead guilty to Count Number One.
Understanding that that's the offer, how do you wish to plea[d] to Count Number One in this case?

[Mr. Depetro]: Count Number One, I will plead guilty.

[The Court]: The [c]ourt believes the change of plea was made knowingly, voluntarily, and intelligently. I'll accept your change of plea, make a finding of guilty.[1]

**{¶15}** In his brief, Mr. Depetro argued only that his plea was not made knowingly because the trial court failed to explain the presumption of prison could be rebutted, pursuant to R.C. 2929.13(D)(2), if certain findings were made. However, in accordance with Crim.R. 11, the trial court was not required to explain that the presumption of prison could be rebutted prior to taking Mr. Depetro's guilty plea. Moreover, Mr. Depetro failed to point this Court to any legal authority, or offer any legal analysis, in support of this claim. ("Where an appellant fails to develop an argument in support of his assignment of error, this Court will not create one for him." *State v. Franks*, 9th Dist. Summit No. 28533, 2017-Ohio-7045, ¶ 16; *see also State v. Harmon*, 9th Dist. Summit No. 26426, 2013-Ohio-2319, 2013 WL 2457186, ¶ 6, citing App.R. 16(A)(7) and *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998).)

**{¶16}** Accordingly, Mr. Depetro's fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR II

**[MR.] DEPETRO WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY SECTION 10, ARTICLE I, OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION.**

**{¶17}** In his second assignment of error, Mr. Depetro argues his trial counsel was ineffective for failing to introduce any evidence or call any witnesses at the hearing on his

---

[1] The trial court also advised Mr. Depetro regarding mandatory post-release control after his release from prison.

motion to withdraw his guilty plea. Instead, "trial counsel merely stated that [Mr.] Depetro was innocent, has a defense and that he wishes to withdraw his plea." Mr. Depetro claims if his counsel had presented evidence, "the [trial] court would have granted [Mr.] Depetro's [m]otion to [w]ithdraw."

{¶18} To prevail on a claim of ineffective assistance of counsel, Mr. Depetro must establish: (1) that his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. A court, however, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). To establish prejudice, Mr. Depetro must show that there existed a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 138.

{¶19} Mr. Depetro argues *if* his counsel presented evidence and called witnesses at the hearing, the trial court would have granted the motion to withdraw his guilty plea. Indeed, as the Supreme Court of Ohio stated, trial "[c]ounsel's decision to call a witness is a matter of trial strategy. Such decisions will generally not be second-guessed by a reviewing court." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 113. Moreover, Mr. Depetro merely speculates as to the outcome of the hearing if evidence and witnesses would have been provided. Speculation, however, is insufficient to establish ineffective assistance of counsel. *State v. Short*, 129 Ohio

St.3d 360, 2011-Ohio-3641, ¶ 119, quoting *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 217 (stating that mere speculation "is insufficient to establish ineffective assistance").

{¶20} Accordingly, Mr. Depetro's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

## [MR.] DEPETRO'S SENTENCE WAS EXCESSIVE.

{¶21} In his third assignment of error, Mr. Depetro argues his 6-year minimum sentence is excessive because he had no prior criminal record, was working two jobs at the time of the offense, was not the child's natural father, and was not home when his co-defendant committed the offense. Mr. Depetro's argument, however, is not well-taken.

{¶22} "The Supreme Court of Ohio has held that 'an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law.'" *State v. Davis*, 9th Dist. Summit No. 29824, 2021-Ohio-1796, ¶ 6-7, quoting *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1; R.C. 2953.08(G)(2). "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

{¶23} "Trial courts have full discretion to impose a prison sentence within the statutory range" and are not "required to make findings or give their reasons for imposing * * * more than the minimum sentences." *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, paragraph seven of the syllabus. "Nevertheless, 'the court must carefully consider the statutes that apply to every felony case[,]' including 'R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense

and recidivism of the offender.'" *State v. Lucas*, 9th Dist. Summit No. 29077, 2019-Ohio-2607, ¶ 13, quoting *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, ¶ 38. "Unless the record shows that [a] court failed to consider the factors, or that the sentence is 'strikingly inconsistent' with the factors, the court is presumed to have considered the statutory factors if the sentence is within the statutory range." *State v. Fernandez*, 9th Dist. Medina No. 13CA0054-M, 2014-Ohio-3651, ¶ 8, quoting *State v. Boysel*, 2d Dist. Clark No. 2013-CA-78, 2014-Ohio-1272, ¶ 13.

{¶24} Here, prior to sentencing, the trial court explained, in detail, its rationale for sentencing Mr. Depetro to an indefinite prison term of a minimum of 6 years and a maximum of not more than 9 years. In so doing, the trial court described the deplorable condition of the child's home environment, the three-and-a-half foot by five-foot closet the child was kept in for an extended period of time, maybe over one year in duration, and the overwhelming stench of urine and feces in the home and closet. The trial court also addressed the physical condition of the child, including that at five-years of age, the child weighed twenty-six pounds, could not speak, had bug bites, inflamed genitals, and open scabbing sores, and was not toilet-trained. The child was malnourished and had bruises and sores all over. The child's fingernails and toenails were so outgrown that they appeared yellow and brown, in color, and curled in on themselves. Additionally, the child had bruising on the side of her head that appeared to be fading and another bruise on her forehead and a red mark between her eyes. The child had linear bruises across her butt cheeks and scarring on both wrists. The child also had scars and red marks on her abdomen and her thumb appeared to be cracking and healing. There were scratch marks on the bottom of the door inside the closet, presumably from the child's attempts to escape. The trial court characterized this situation as "one [it will] remember."

{¶25}  Moreover, in addressing the trial court prior to sentencing, Mr. Depetro expressed no remorse for this situation, stating:

> I realize I did come here [] about a month ago, I did plead guilty.  I only pled guilty because if you look at the charges I'm being charged with, the possible time I could get [] if a jury finds me guilty of that stuff[.]  * * * But yeah, * * * I've never abused any child.  * * * I was in a bad situation[.]  I know it looks like I'm guilty, but this is the situation that happened.

Further, in its Judgment Entry, the trial court stated it "considered the record, oral statements, any victim impact statement and presentence report prepared, as well as the principles and purposes of sentencing under [R.C.] 2929.11.[2]

{¶26}  Upon review of this record, we cannot say it shows the trial court failed to consider the sentencing factors, pursuant to R.C. 2929.11, or that Mr. Depetro's sentence, which is squarely in the statutory range for this offense, is "strikingly inconsistent" with these factors.  *Fernandez* at ¶ 8.

{¶27}  Accordingly, Mr. Depetro's third assignment of error is overruled.

### III.

{¶28}  Mr. Depetro's assignments of error are overruled and the judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

—————

There were reasonable grounds for this appeal.

---

[2] The presentence investigation report was made part of the record on appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

WESLEY A. JOHNSTON, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.